The next case this morning is number 520-0083, Illinois Federation of Public Employees Local 4408 v. St. Clair County Treasurer et al. Arguing for the appellant, Illinois Federation of Public Employees Local 4408 is Thomas Keefe Jr. Arguing for the appellee, St. Clair County Treasurer et al. is Kevin Horner. Each side will have up to 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Counselor, the appellant is ready. You may proceed. Thank you, Your Honor. Counsel, Mr. Horner, I did a lot of business with your dad, so it's nice to see you sitting there and may it please the court. The first thing I'd like to tell the court is that we did not file a reply brief in this case. We'd ask the court to please understand our failure to file a reply brief does not reflect in any way our feelings as to the importance of this issue. We believe that the issue that is before the court today is critical, not only for the resolution of the issue in St. Clair County, but as it relates to a statement as to the interplay of the courts as it relates to St. Clair County or any county's ability with their funding to control the courts. The reality is, Judge, we didn't receive the appellee's brief until yesterday. We read it yesterday. If you look at the service list, we didn't get it. I believe that Mr. Horner's office sent it to us. We just simply didn't receive it. And if you look at the service list, you'll see that that's the reality. So I just wanted to make that clear to the court. Here are the facts of the case. Was it served electronically, Counsel? I'm sorry, Your Honor, I couldn't hear you. Was it served electronically? No, sir. According to the notice that appeared from the appellate court, we were not on the service list. Our co-counsel, who's not actively participated in this case, Vandler Eckert, was, but we weren't. We're not claiming any prejudice, Judge. We're ready to go. Let's proceed, then. Thank you. I'm trying to understand. I'm sorry, Judge Moore, I'm having a hard time hearing you. You're cutting out. I was just trying to understand what happened. Okay. Thank you, Your Honor. The facts of this case are as follows. The chief judge of any circuit must provide probation services for all counties in the circuit. In our circuit, St. Clair County, we have five counties. Local 4408 is the collective bargaining agent for the probation department. And in addition to that, they enter into an annual collective bargaining agreement with the chief judge. The state is their employee. This is an important point. I'd like to make it early. The state is their employee. They are employed by the state. And the chief judge is the personification of the state. There's been some discussion about whether they're judicial employees, county employees. If you look at the Supreme Court case in Orenic, it specifically states that these employees are state employees. The state is personified by the chief judge. The agreement is circuit-wide. The agreement is that their salaries and benefits are submitted to the Supreme Court Probation Services Division for approval. Thereafter, the state reimburses the counties for their expenditures on probation services. If the court would note, for over 40 years in St. Clair County, the chief judge has directed the county to administer funding for the probation department for the entire circuit. That's been the custom and practice until 2018. And St. Clair County, as the largest county, is then reimbursed by each county for whatever expenses St. Clair County paid as to services rendered by each of those counties. But for the fact that this case was resolved on a motion for judgment on the pleadings is that we would have had evidence to show that every outer county, Monroe, Randolph, Washington, and Perry are all paid up to the dollar. In November of 2018, St. Clair County decided it wasn't going to fund any probation officers or salaries unless they worked in St. Clair County and their proposed budget so reflected. They took a position that they don't have to advance salaries for officers who don't work in St. Clair County. In 2018, they prepared a budget at the very end of the year. And when we became aware of that budget, we filed suit because that budget would have taken away salaries, medical benefits, and medical expenses for many of those what we refer to as out of county probation officers. We agreed to an injunction. The injunction stayed in place. And then at that point, that was the status until the trial court entered this order from which we appealed. An order that was entered once again on a motion for judgment on the pleadings. For two years, in 2020 and 2021, St. Clair County has been operating under budgets which do not include funding for these out of county. And if we had been allowed to present evidence, but we weren't because it was a motion for judgment on the pleadings, we could have shown the court the enormous prejudice and the undue burden that this has caused the judiciary. We appealed the trial court's order granting the motion for judgment on the pleadings because there was no record and no evidence. And so there's no misunderstanding. The basis of the defendant's argument is very simple. They base it on the probation and probation officer statute and specifically this language. The amount of compensation should be determined by the county boards of the several counties in which such officers respectively are appointed and shall be paid by the county treasurer. Now, we'd ask the court to please understand. In this case, the counties are responsible for funding. They ultimately pay all of the bills. St. Clair County sends the bill. They are paid. We are not talking about this statute and funding. We're talking about the chief judge's discretion to budget. This isn't funding. This is the trial. This is the chief judge's discretion as to how he's going to run his budget. Now, the long and the short of the defendant's argument is very simple. The Probation Act does not explicitly require St. Clair County to provide for the circuit's probation department in its annual budget so they don't have to. That's not the issue, your honors. The issue is whether the chief judge can require St. Clair County to adhere to a budgeting arrangement necessary so that the courts can be supported in their mission, which is I'm going to point out in my separation of powers argument and my orenic argument, trump every other issue, including this statute. And whether or not simply because the judge's budget arrangement, an arrangement that's gone on for 40 years, is that whether that arrangement is explicitly required or mandated in the act is not the issue. The issue is whether or not that arrangement, in fact, is consistent with Supreme Court precedent, with the Constitution, and, of course, with a factual record, which we could have developed, which would show that it is not. Let's start with the conversation about separation of powers. It's certainly a principle that we all learned. We learned it. I'm sorry, your honor, I can't hear you. Mr. Keith, let me ask you. I was a little confused about the hearing. Was Judge Lambert the judge that heard this case? Yes, your honor. The transcript indicated a county judge, and I just wanted to make sure that it was Judge Lambert. It was. Thank you. Thank you, your honor. Let's start with this separation of powers. It's the most basic one of the most basic principles. And it's so important and it's so important for the judiciary. The purpose of the doctrine is to keep each branch free from control or coercive influence from the other branches. The judicial power in the state of Illinois lies with the courts, including the power to administer the court system. That's from the Constitution, the Illinois Constitution. And that same Constitution contemplates only one unified court system under which administration of justice is a matter of statewide concern. As to the county's authority, that appears in the county code. And in the county code, the Supreme Court has specifically said clearly absent from the county code is any statement providing for control by the county over any operation of the courts or clerks in the circuit court. With respect to that, the court's administrative authority, and this is per the Supreme Court's holding, Illinois Supreme Court's holding in Jorgensen, over the judicial branch, quote, carries with it the corresponding authority to require production of the facilities, personnel and resources necessary to enable the judicial branch to perform its duties. That is separation of powers. In fact, it is so critical because if we go all the way back to the Federalist Papers, in Alexander Hamilton, he said to us, the judiciary must rely upon other branches of government. It has no influence over either the sword or the purse. In fact, there's a statement that appears in Jorgensen which reiterates that very principle. The judiciary must possess the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities and its power to duties to administer justice, if it is in reality to be a co-equal branch of government. And in this case, there was a judgment entered on the pleadings. And in this case, that judgment was entered on the pleading with no consideration or determination of how the action by St. Clair County in just deciding that they were no longer going to pay for the out-of-county probation officers, how the effect of that has literally hamstrung the 20th Judicial Circuit and Judge Gleeson in his ability to administer the probation department. And at the end of my argument, I hope to give you specific examples of what they'll be in the nature of offers of proof, because there is no record. And in this instance, we also believe Judge Lambert, who's a fine judge and a fine gentleman, he did not analyze nor did he mention either the separation of power doctrine, nor did he even mention other than in passing Supreme Court precedent. Now, I'd like to talk about Orenic. Orenic, we believe, is a Supreme Court case which is controlling. Now, here were the facts. The Illinois State Labor Relations Board said that the court's non-judicial employees were just joint employees of both the chief judge and the county. Well, the judges immediately filed for writ of mandamus and said, wait a second. If you make that holding, you are going to then have a situation where they are going to become a party to the collective bargaining agreement, and they are going to have undue influence over our budget, because when we're trying to negotiate with these employees, if these guys are going to be a co-employer, they're going to come in low. And it's going to make it impossible for us to do our job, because they're going to use funding to exercise undue hardship and undue control on the judiciary branch. Well, the court simply agreed. And the court said, and this is important, the court ultimately held, when it comes to the circuit court's non-judicial employees, the county serves a function, funding, but the county's function is, quote, subject to the court's ultimate power to ensure provision of services in the circuit. And with this statement, it is critical. The Illinois Constitution contemplates only one unified court system operating statewide and does not contemplate, nor does it authorize, the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity. What St. Clair County has done and done for the past two years is they have created a terrible burden on the judge's ability to administer his court system. And because I see where I am on time, I can come back to this, what I'd like to just first talk about. If we had been given a chance to make a record, this would be certain evidence that would demonstrate the burden that has been created by St. Clair County's unilateral decision to take away funding for the out-of-county probation. If we had had a chance, the evidence would have shown that presently the 20th Judicial Circuit Probation Office has vacancies for officers in both Perry and Monroe County. They also have vacancies for other supportive offices. They have taken their applications and appropriate paperwork to St. Clair County to fill these vacancies. St. Clair County refuses to process the paperwork because they say it's not in their budget. Now, consider that. They have in effect, by doing what they have done, is that they have in effect eliminated the judge's ability to hire the necessary personnel of all things in the outer county. The judge is being deprived of his constitutional duty to administer probation services. Now, in addition to that, because St. Clair County has taken this position, and remember, this isn't funding, it's the judge's ability to control his funding mechanism. Because they have done this, what has happened is, is that the judge has in effect been prevented from doing what he has been ordered by the statute to do. Now, let's make one thing clear. St. Clair County is not prejudiced by this. They are merely a flow-through for payment. That fact's not terribly important, but it is something that needs to be said, is that they don't advance money or pay benefits. There's a fund from which they can draw, and they draw from it all the time. They have never advanced funds. What this is about more than anything, is this is an order that is making the judge ultimately deal with five payrolls, four human rights, HR departments, disparate salaries. Can you imagine one unified circuit dealing with one collective bargaining agent, and yet there's going to be different salaries and different benefits? That's what St. Clair County has done, and by doing that, they have imposed an undue hardship upon the court. Consider the union issues. Consider this. Since the office is unionized, that would mean that the chief judge would now have to negotiate with five separate counties, with obviously different desperate results, which would make his job unmanageable and untenable. This is simply a question about St. Clair County exercising funding influence, and as a result of that funding influence, depriving the court pursuant to separation of powers and pursuant to Supreme Court authority of its power to administer and effectively administer its probation department. I know I'm out of time, Your Honor. Thank you very much. The appellee, are you prepared and ready to go? Go ahead. Can you hear me, appellee? Yes. May it please the court, counsel, Andrew Horner on behalf of the defendants, appellees, St. Clair County Treasurer Andrew Lopono, St. Clair County Board Chairman Mark Kern, and St. Clair County. The single issue that this court has been asked to rule on in this appeal is a straightforward issue of statutory construction, and that is whether the Illinois Probation and Probation Officers Act requires, and I want to put an emphasis on the word require, whether the act requires St. Clair County to pay the compensation and provide fringe benefits to the affected members, which are defined in plaintiff's amended complaint as the local 4408 probation officer members that work in Randolph, Monroe, Washington, and Perry counties. For the following reasons, the answer to this question is no. The affected members are probation officers who are designated to work on a county basis. That is to work solely in a county that is within the 20th Judicial Circuit, but that is exclusively outside of St. Clair County with no work being performed within St. Clair County. As I will discuss, regardless of how St. Clair County set its budget in previous years, St. Clair is not required to pay the compensation and provide fringe benefits to probation officers who are specifically designated on a county basis to work exclusively in a county that is outside of St. Clair County. Before turning to the language of the act, which is the subject of this appeal, this court has repeatedly and routinely observed that the primary rule of statutory construction is to give effect to the true intent of the legislature, which is best determined from the statutory language itself, without resorting to other aids of construction. It is a cardinal rule of statutory construction that when statutory language is clear and unambiguous, it must be given effect without resort to other aids of interpretation. Under Section 15.2.A of the Act, the Chief Judge of each Judicial Circuit is required to provide full-time probation services for all counties within the circuit in a manner consistent with the annual probation plan, the standards, policies, and regulations established by the Supreme Court. Section 9.B.3 of the Act provides the decisive distinction between probation officers designated on a circuit-wide basis and those designated on a county basis by expressly stating that probation officers are judicial employees designated on a circuit-wide or on a county basis and compensated by the appropriate county board or boards. Section 14 of the Act contemplates the payment mechanism for a probation officer designated on a county basis. In relevant part, Section 14 states that the amount of compensation to be paid to any court services or probation officer shall be determined by the county boards of the several counties in which such officers are appointed and shall be paid by the county treasurer on the warrant of the county comptroller or other person authorized to issue warrants on the county treasurer. Section 14 of the Act goes on to differentiate the payment mechanism for a probation officer that is appointed on a circuit-wide basis. In relevant part, Section 14 further provides that the salary for probation officers serving throughout such circuit or probation officer district shall be apportioned between such counties on the basis of their population as determined by the last national census, and the respective portions thereof shall be paid by the county treasurer upon warrants issued by the chief circuit judge. Based on the foregoing language under Section 14, although probation officers are considered judicial employees, the responsibility for their compensation falls on the county to which they are assigned unless the officers are appointed on a circuit-wide basis, in which case the officers' salaries are apportioned. Finally, Section 1511 of the Act expressly requires the county to which the probation officer is assigned is responsible for fringe benefits such as health insurance of these probation officers. In relevant part, Section 1511 provides that the respective counties shall be responsible for capital and space costs, fringe benefits, clerical costs, equipment, etc. Applying these statutory construction principles, it is clear that St. Clair County is not statutorily obligated to pay the salaries, health insurance premiums, and other fringe benefits of the affected members. Again, plaintiff's argument is not asserted on behalf of the probation officers assigned to St. Clair County. It centers only on the probation officers assigned to the remaining other counties in the 20th Judicial Circuit, which are Randolph, Monroe, Washington, and Perry counties. The Act does not contemplate the previous practice of the counties within the 20th Judicial Circuit, whereby St. Clair compensates the probation officers assigned on a county basis in advance and then obtains reimbursement from those counties thereafter. The Act actually expressly requires otherwise. As Judge Lambert accurately observed in his order granting defendant's motion for judgment on the pleadings, the only mention of payment by the most populous county of the circuit, which in the 20th Judicial Circuit is St. Clair, deals with funds received from the Supreme Court for probation services. Section 15B-9 simply requires the most populous county to distribute funds received from the Supreme Court to the various counties of the circuit. Section 15B-9 does not mandate that the most populous county of the circuit pay all of the probation officers' salaries and fringe benefits for the entire circuit and then seek reimbursement from the other counties of the circuit. Again, the issue here is not whether the affected members will be paid. It is the mechanism by which the affected members should be paid in accordance with the Act. For all of these reasons, defendants respectfully request that this Court affirm the trial court's order granting defendant's motion for judgment on the pleadings. Your Honor, neither side cited the Juvenile Court Act, but the Juvenile Court Act, Section 405-6-5-2, spells out exactly that, that the smaller counties pay their apparatus share to the largest county, and then the largest county makes the payments. How do you square that? Granted, that only applies to the juvenile court proceedings, but it would seem confusing to have two separate mechanisms, one for probation officers when they're doing juvenile cases and a whole separate system for adult probation. Your Honor, it's defendant's position that we are not depriving the Chief Judge of Circuit Probation Department funding. It's simply defendant's position that the Probation Act provides two statutory mechanisms through which probation officers are paid, dependent on their designation as county basis versus circuit-wide. And based upon the affected member's designation to counties outside of St. Clair, as opposed to a circuit-wide designation, St. Clair County is not statutorily obligated to pay the salaries and fringe benefits of these affected members. But they may be assigned to a specific county, but aren't they all probation officers of that circuit, that probation district? The probation officers are assigned, yes, certain probation officers are assigned to counties, and they only work in those counties while others are assigned on a circuit-wide basis. But they're not a county employee, they're an employee of the circuit. And we're not arguing that the affected members are not judicial employees. I do want to address Tom's separation of powers issue. No separation of power issue exists here because defendants have, under no circumstances, interfered with the 20th Judicial Circuit's administration of or decision-making regarding its probation services. Again, the issue here is not whether the affected members will be paid, it is simply the mechanism by which the affected members should be paid in accordance with the Act. Thank you. Counsel, you have five more minutes if you want to say more. I would, Your Honor. Thank you very much. May it please the court again. Justice Vaughn, you're right. The juvenile statute does say that, and we were remiss in not pointing that out in our brief. And the reason the juvenile statute says that is because it is, in effect, a funding mechanism, which does pay appropriate deference to the overriding principles of separation of power and the need to have a judiciary which has the resources in order to do its job. The statute, as Mr. Horner has argued, he's trying to argue that the statute literally trumps the Constitution. And it trumps, literally trumps the Supreme Court precedent, which has interpreted the Constitution. The reason this issue is so critical is because this involves the power of the judiciary, in this case, to do its job. And that job is a statutorily mandated job to run the probation department. And really, more than anything, is that he says that this argument, his argument, this argument centers on statutory contraction. No, it doesn't. It centers on the issue of judicial authority and the ability of the judiciary not to be held hostage by the county who controls the purse strings. May I please point out the following? In Orenic, the following statement is made, and so there's no misunderstanding as to what Mr. Horner is saying. He says they're judicial employees. Orenic says this. Not only are non-judicial employees of a court the employees of a state agency rather than of a county, but even the county's salary setting and facilities providing function is subject to the court's own ultimate power to ensure reasonable adequacy. Their continued disregard of any discussion of Orenic is clear on its face because they cannot get around that language. Furthermore, it says the Illinois Constitution contemplates only one unified court system operating statewide and does not contemplate nor does it authorize the exercise of any control over or permit the imposition, the imposition of a burden on the judicial system by the local entity, an imposition of a burden. What they have done is they are imposing a terrific burden. And what we're asking this court to do is not only send the case back for an evidentiary hearing, but give the judge some instruction as to what, in fact, has to be proven in order for us to get the declaration, which will protect the power of the judiciary. That's ultimately what we are seeking here. Can I add this as well? Counties have the power and duty. This is also this is direct quotes from the Supreme Court case of Orenic, where they're talking specifically about a county's funding ability to control the courts and creating undue hardship on the courts. Counties have the power and duty to set and pay salaries of circuit courts, non-judicial employees. But this authority is tempered by the court's responsibility to administer justice and the retention of inherent powers to protect themselves and the public they serve against default of their constitutional obligations. What St. Clair County is doing is causing the chief judge to default on his obligations. And judge, in answer to your earlier question, yes, these probation employees are all part of the same circuit. We are we have we are the largest county, but we are the 20th Judicial Circuit. All of those employees report to Judge Gleason. Judge Gleason has responsibility for administering the probation department in all five counties. Furthermore, I would say this as it relates to what the court also said. It said the retained power, and this is what we're talking about here of the courts, includes the power to recognize that the power to require production of the facilities, personnel and resources reasonably necessary for the court's operation. They have specifically ignored that principle in their argument. They have specifically acted contrary to that. I also point one other thing out in their brief. They say that we say they're judicial employees. We do not. We say that they are not judicial employees. We say that they are state employees and the chief judge is the personification of the state. Our authority for that statement came straight from O'Rennick, which I read to you earlier, is that the judge and chief judge acts on behalf of the state. This is an important issue, your honors. It's an important issue as it relates to separation of powers. And I'd ask the court to remain the case with instructions to Judge Lambert to have a hearing and to apply the facts to the principles we have argued here today. Thank you very much. Thank you, counsel. Case will be taken under advisement. You'll be excused. Thank you, your honors.